**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:18-cv-00267-MR-WCM**

| | |
|---|---|
| **LONNIE BARBEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **ISOTHERMAL COMMUNITY** ) | |
| **COLLEGE, RUSSELL WICKER,** ) | |
| **DAVID LIBERA, THAD HARRILL,** ) | |
| **STEVE MATHENY, WALTER** ) | |
| **DALTON, and SALONIA THORN,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for
Summary Judgment [Doc. 30] and the Defendants' Motion for Sanctions for
Plaintiff's Failure to Attend Mediation [Doc. 29].

## I.     PROCEDURAL BACKGROUND

On September 19, 2018, Lonnie Barbee (the "Plaintiff"), proceeding
*pro se*, filed a Complaint against Isothermal Community College ("ICC");
Walter Dalton, the President of ICC; Stephen Matheny, the Vice President of
Administrative Services at ICC; Thad Harrill, the Vice President of
Community and Workforce Development, College Advancement, and
Director of Alumni Affairs at ICC; Russell Wicker, the Director of the ICC

Performing Arts and Conference Center ("PACC"); David Libera, a former ICC employee at the PACC; and Salonia Thorn, a part-time ICC employee at the PACC (collectively the "Defendants"). [Doc. 1]. The Plaintiff's Complaint asserts claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., for age discrimination, disability discrimination, retaliation, hostile work environment, disparate treatment, and wrongful termination [Id.].[1] On February 7, 2019, the Defendants answered. [Doc. 7].

On July 3, 2019, a Pretrial Order and Case Management Plan was entered setting various deadlines in this case. [Doc. 15]. That Order was subsequently modified twice, ultimately setting May 8, 2020 as the mediation deadline. [Docs. 25, 27]. Although the parties agreed to conduct a mediated settlement conference via videoconference on May 6, 2020, the Plaintiff never appeared. On May 8, 2020, the Defendants filed a Motion for Sanctions for Plaintiff's Failure to Attend Mediation. [Doc. 29].[2] Pursuant to

_____

[1] The Plaintiff's specific claims are not readily ascertainable from his Complaint. The Plaintiff's response to the Defendants' Motion for Summary Judgment, however, contends that he brings claims for "discrimination based on age, disability, retaliation, hostile work environment, disparate treatment, and wrongful termination." [Doc. 37-1 at 1].

[2] On May 14, 2020, eight days after the mediation deadline passed, the Plaintiff filed a motion to extend the mediation deadline. [Doc. 32]. The Magistrate Judge denied the Plaintiff's motion. [Doc. 33 at 6].

28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable W. Carleton Metcalf, United States Magistrate Judge, was designated to consider the Defendants' Motion.

On May 15, 2020, the Defendants filed a Motion for Summary Judgment. [Doc. 30]. On May 20, 2020, the Magistrate Judge entered an Order deferring consideration of the Defendants' Motion for Sanctions pending the resolution of the Defendants' Motion for Summary Judgment. [Doc. 33]. On July 27, 2020, the Plaintiff filed his response to the Defendants' Motion for Summary Judgment. [Doc. 37]. On August 5, 2020, the Defendants replied. [Doc. 39].

Having been fully briefed, this matter is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346

F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## III.    FACTUAL BACKGROUND[3]

Before any of the events relevant to this case, the Plaintiff sustained injuries in a car crash that limit his ability to move his hands, write, and recall information. [Doc. 37-2 at ¶ 3].

---

[3] Because this summary of facts is presented for the purposes of analyzing the Defendants' Motion for Summary Judgment, the facts as set forth in the forecasts of evidence are presented in the light most favorable to the Plaintiff.

4

In 1999, the Plaintiff began working informally at ICC as a stagehand in the PACC. [Id. at ¶ 1]. In January 2005, ICC formally hired the Plaintiff as a part-time stagehand in the PACC. [Id. at ¶ 1]. The Plaintiff notified ICC about his disability before he was formally hired. [Id. at ¶ 4].

During his employment at ICC, the Plaintiff was supervised by Defendants Wicker and Libera. [Id.]. Defendant Wicker was the director of the PACC facility, while Defendant Libera was the technical direct and thus the Plaintiff's immediate supervisor. On July 14, 2016, Defendant Libera issued a written reprimand to the Plaintiff for failing to show up on a scheduled workday and being absent during a show. [Id. at ¶ 7].

On September 1, 2016, Defendant Wicker submitted a request for the Plaintiff to receive a pay increase. [Doc. 30-1 at 114]. On January 1, 2017, the Plaintiff received the requested pay increase. [Id. at 20].

In early 2017, ICC formally hired Defendant Thorn to work part-time at the PACC. [Doc. 37-2 at ¶ 5]. Defendant Thorn and the Plaintiff performed many of the same tasks. [Id. at ¶ 6]. After Defendant Thorn started working, Defendant Wicker reduced the hours work by the Plaintiff and other employees and gave those hours to Defendant Thorn. [Id.; Doc. 37-4 at ¶ 2]. Shortly thereafter, the Plaintiff asked Defendant Libera why ICC hired Defendant Thorn. [Doc. 37-2 at ¶ 8]. Defendant Libera responded that the

5

PACC needed "fresh blood." [Id.]. On two other occasions, Franklin "Robby" Holland, a custodian at ICC, heard Defendant Wicker say that the PACC needed "new blood" because the Plaintiff and another employee were "getting old." [Doc. 37-3 at ¶ 2].

The Plaintiff complained about the comments and the reduction in his hours to Defendants Wicker, Harrill, and Matheny. [Doc. 37-2 at ¶¶ 8-10]. No action was taken in response to the Plaintiff's complaints. [Id.]. Sometime after the Plaintiff complained, another employee sabotaged the Plaintiff's headset during a performance and threw a roll of tape at the Plaintiff, which injured his hand. [Id. at ¶ 11].

In September 2017, Defendant Libera left his position at the PACC. [Id. at ¶ 13]. Defendant Libera was one of the employees who helped accommodate the Plaintiff's disability by handwriting instructions for him. [Id.].

On November 30, 2017, the Plaintiff and Defendant Wicker got into an argument following a performance at the PACC. [Doc. 30-1 at 34; Doc. 37-1 at ¶¶ 21-22]. The argument started because Defendant Wicker was unhappy with the way the Plaintiff operated the lights during the performance. [Doc. 37-2 at ¶ 22]. The Plaintiff challenged Defendant Wicker's approach in front of another employee and then went outside for a

smoke break. [Doc. 30-1 at 35]. Defendant Wicker followed the Plaintiff outside and told him that he should not "correct me in front of an employee." [Id.]. The two began arguing and Defendant Wicker told the Plaintiff to leave the PACC. [Id.]. Defendant Wicker never referenced the Plaintiff's age or disability during the argument. [Id. at 38].

Later that night, Defendant Wicker messaged the Plaintiff on Facebook, where he typically sent work schedules to the Plaintiff, and said: "I'm not going to be needing you for the rest of December. Thanks for the Dedication. Take care." [Doc. 30-4 at 7]. The Plaintiff responded by sending several unanswered messages to Defendant Wicker, including ones stating:

- "[B]eware, BIG BOY, I'm coming after you . . . ."
- "Hope you are ready for all this, buddy . . . ."
- "You are just a HILL BILLY . . . ."
- "[Y]ou can't even get along with your own wife . . . ."

[Id. at 7-9]. Although Defendant Wicker never responded to the Plaintiff's messages, he decided that the Plaintiff would not work at the PACC anymore. [Id.; Doc. 30-4 at ¶ 3]. The Plaintiff was 72 years old when he last worked at the PACC. [Doc. 37-2 at ¶ 3].

7

## IV.    DISCUSSION

### A.    Claims Against Individual Defendants

Defendants Dalton, Matheny, Harrill, Wicker, Libera, and Thorn move for summary judgment on all the Plaintiff's claims against them, arguing that there is no individual liability for claims asserting ADA violations, ADEA violations, or wrongful discharge in violation of North Carolina public policy. [Doc. 31 at 14].[4]

The ADEA and the ADA do not provide for individual liability and allow claims only against employers. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994) (stating that "the ADEA limits civil liability to the employer . . . ."); Miller v. Ingles, No. CIV. 1:09-cv-00200, 2009 WL 4325218, at *8 (W.D.N.C. Nov. 24, 2009) (Reidinger, J.) (stating that "individuals are not liable for violations of the ADA.") (citation omitted).   "'Likewise, a claim for wrongful discharge under North Carolina law cannot be brought against an individual . . . .'"  Magaha v. W & B Trucking, Inc., No. 1:15-cv-00159-MOC-DLH, 2015 WL 8759260, at *4 (W.D.N.C. Dec. 14, 2015) (quoting Gibson v. Corning Inc., No. 5:14-cv-105-BO, 2015 WL 1880188, at *4 (E.D.N.C. Apr. 13, 2015); Iglesias v. Wolford, 539 F. Supp. 2d 831, 839-40

---

[4] The Plaintiff cites several vicarious liability cases for the proposition that individuals can be held liable under the ADEA and the ADA.  [Doc. 37-1 at 12].  Those cases are simply inapposite.

8

(E.D.N.C. 2008)).  The Plaintiff's forecast of evidence clearly shows that his employer was Defendant ICC.  Because Defendants Dalton, Matheny, Harrill, Wicker, Libera, and Thorn are individuals, and do not qualify as employers under the ADA, the ADEA, or North Carolina state law, their Motion for Summary Judgment on the Plaintiff's claims against them will be granted.

## B.    Disparate Treatment

Defendant ICC moves for summary judgment on the Plaintiff's disparate treatment claim based on unequal pay, arguing that the Plaintiff failed to raise those claims in his EEOC charge.  [Doc. 39 at 9].

A plaintiff must exhaust administrative remedies with the EEOC before filing suit under Title VII.  Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).  That procedural requirement is applicable to ADA claims and ADEA claims as a matter of law.  42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 626(d) (ADEA).  "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."  Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a

9

subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

In the Plaintiff's EEOC charge, he stated that he brings claims for retaliation under the ADEA because he was replaced by a younger employee, and disability discrimination because he was not given a reasonable accommodation. [Doc. 30-1 at 94]. The Plaintiff's EEOC charge contained no allegations, however, about a disparate treatment claim based on unequal pay. Such a claim would not have been developed by an investigation of the claims that were included in the Plaintiff's EEOC charge, which focused on his termination and the accommodations offered to him during his employment, instead of his compensation compared to similarly situated employees. See Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("A claim will also typically be barred if the administrative charge alleges one type of discrimination – such a discriminatory failure to promote – and the claim encompasses another type of discrimination – such as discrimination in pay and benefits."). Because the Plaintiff never raised his unequal pay claim before the EEOC, this Court has no jurisdiction over that claim. See, e.g., Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995). As such, Defendant ICC's Motion for Summary Judgment will be granted on the Plaintiff's disparate treatment claim based on unequal pay.

## C.    Wrongful Termination

Defendant ICC moves for summary judgment on the Plaintiff's wrongful termination claims under the ADEA and the ADA.  [Doc. 31 at 15].

### 1.    ADEA Wrongful Termination

The ADEA forbids an employer "to discharge any individual or otherwise discriminate against any individual . . .  because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence.  Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019).  To establish a prima facie case of discrimination under the ADEA, the plaintiff must show that he was at least 40 years of age; (2) he was qualified for the job and performing in accordance with his employer's legitimate expectations; (3) his employer nonetheless discharged him; and (4) a substantially younger individual with comparable qualifications replaced him.  Id.  To establish a prima facie wrongful discharge claim under the ADA, a plaintiff must show that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination."  Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).  If the plaintiff

establishes a prima facie case of discrimination, and the defendant provides a legitimate non-discriminatory reason for the termination, the plaintiff then must show that the stated reason is pretextual. Sanders v. Tikras Tech. Sols. Corp., 725 Fed. App'x 228, 229 (4th Cir. 2018) (per curiam) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)).

"[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002); see also Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988) (stating that a plaintiff could prove discrimination with "direct evidence of a stated purpose to discriminate"). Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age or retaliation was "the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). "[A]n employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have fired her in the absence of age discrimination." Westmoreland, 924 F.3d at 725 (citing id. at 177).

According to the Defendants, the Plaintiff was terminated because he disrespected and threatened the director of the facility (PACC) where he worked. [Doc. 31 at 10; Doc. 30-2 at ¶ 4; Doc. 30-3 at ¶ 4; Doc. 30-4 at ¶ 3]. The Defendants have presented an uncontroverted forecast of evidence that the Plaintiff was terminated after he argued with the director in front of another employee, called the director a "HILL BILLY," threatened to "come after" the director, and insulted the director's marriage. [Doc. 31 at 8-9; Doc. 30-4 at 7-9]. Given the Plaintiff's actions, there is no genuine issue of material fact as to whether he was "performing in accordance with his employer's legitimate expectations" at the time of his dismissal. Westmoreland, 924 F.3d at 725. An employee does not have immunity to threaten his boss, regardless of the employee's age. Accordingly, the Plaintiff's forecast of evidence is insufficient to establish a prima facie case under the ADEA. Westmoreland, 924 F.3d at 725; Haulbrook, 252 F.3d at 702.[5]

---

[5] Even if the Plaintiff could establish a prima facie case for discriminatory termination, he has not produced any evidence raising a genuine issue of material fact that the reason given for his termination was pretextual. Sanders, 725 Fed. App'x at 229. The Plaintiff does not address the Defendants' stated reason for his termination, that "the sole consideration" for the Plaintiff's termination was his behavior on November 30, 2017. [Doc. 30-2 at ¶ 4; Doc. 30-3 at ¶ 4; Doc. 30-4 at ¶ 3]. The Plaintiff raises no other arguments from which a reasonable jury could conclude that the Defendants' stated reason for his termination was pretextual. Accordingly, the Plaintiff's discrimination claim would fail even if he could establish a prima facie case.

13

The Plaintiff asserts that he has provided direct evidence of discrimination by showing that Defendant Wicker stated that the PACC needed "new blood" because the Plaintiff and another employee were "getting old" and that Defendant Libera also stated that the PACC needed "fresh blood." [Doc. 37-1 at 11]. "Derogatory comments about an employee's age may be direct evidence of age discrimination if they are "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Arthur v. Pet Dairy, 593 F. App'x 211, 218 (4th Cir. 2015) (per curiam) (quoting Jackson v. Cal–W. Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010)).

The comments cited by the Plaintiff as direct evidence were made several months before he was terminated. [Doc. 37-2 at 4; Doc. 37-3 at 3]. As such, those comments were not "proximate in time to the complained-of adverse employment decision." Arthur, 593 F. App'x at 218 (citation omitted). The Plaintiff provides no evidence to show that those comments were in any way related to the employment decision at issue, namely, the Defendants' decision to terminate the Plaintiff. The Plaintiff concedes that some of these comments were made by Defendant Libera, who was no

longer employed as the Plaintiff's supervisor at the time the Plaintiff was fired. To survive summary judgment, the Plaintiff must present a forecast that he would not have been fired apart from the discriminatory animus. Westmoreland, 924 F.3d at 725 ("an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have fired her in the absence of age discrimination"). In the face of the uncontroverted evidence that the Plaintiff behaved in such a hostile, insulting, and threatening manner toward the director of the PACC, no reasonable jury could find that the sentiments expressed long before were the motivating cause of the Plaintiff's dismissal. As such, the comments made by Defendants Wicker and Libera are insufficient direct evidence of discrimination to support a claim under the ADEA.[6] Accordingly, Defendant ICC's Motion for Summary Judgment on the Plaintiff's ADEA claim for wrongful termination will be granted.

---

[6] It is also noted that any comments regarding "new blood" or "fresh blood" pertain more particularly to term of service than to age. Thus, the weakness of the statements at issue, as well as when they were made, fall far short of what is needed to create an issue of *material* fact for a reasonable jury.

Case 1:18-cv-00267-MR-WCM   Document 40   Filed 10/19/20   Page 15 of 27

## 2.   ADA Wrongful Termination

The ADA prohibits employers from terminating qualified employees because of their disability.  42 U.S.C. § 12112(a).  To state a prima facie case of wrongful termination under the ADA, a plaintiff must demonstrate that (1) he was "within the ADA's protected class"; (2) he was terminated from his employment; (3) at the time of his termination, "he was performing his job at a level that met his employer's legitimate expectations"; and (4) that the termination "occurred under circumstances that raise a reasonable inference of unlawful discrimination." Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).

Here, the Defendants' uncontroverted forecast of evidence shows that the Plaintiff behaved in a hostile, insulting, and threatening manner toward the director of the PACC and was terminated immediately thereafter.  The Plaintiff has offered no forecast of evidence that would give rise to a reasonable inference that his discharge was in any related to his disability. Accordingly, Defendant ICC's Motion for Summary Judgment on the Plaintiff's ADA claim for wrongful termination will be granted as well.

## 3.   Termination Violating North Carolina Public Policy

The Plaintiff's response to the Defendants' Motion for Summary Judgment generally claims that his Complaint asserts a claim for wrongful

termination claim without referencing the statutes by which he asserts those claims.  [Doc. 37-1 at 1].  Although the Plaintiff does not specify the basis for his wrongful termination claim, the Court is required to construe *pro se* pleadings liberally. See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002). The Plaintiff can bring a wrongful termination claim under North Carolina law by showing that his termination "offends public policy,"  see Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 332, 493 S.E.2d 420 (1997), Accordingly, the Court proceeds as if the Plaintiff brought a claim for wrongful termination under North Carolina public policy and the Defendants moved for summary judgment on that claim.

North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles to be applied in discrimination cases." Johnson v. Crossroads Ford, Inc., 230 N.C. App. 103, 110, 749 S.E.2d 102, 107 (2013).  As such, "[w]hen considering a wrongful discharge claim based on age under North Carolina law, the court applies the same standards that apply under the ADEA" and the ADA.  Leonard v. Trustees of Cleveland Cmty. Coll., No. 1:17-cv-00296-MOC-WCM, 2019 WL 2076566, at *3 (W.D.N.C. May 9, 2019) (ADEA); Woodruff v. Red Classic Transit, LLC, No. 3:19-cv-00050, 2019 WL 4670789, at *4 (W.D.N.C. Sept. 24, 2019) (ADA).

The Plaintiff has failed to show that there is a genuine issue of material fact regarding whether his termination violated the ADA or the ADEA. Accordingly, the Plaintiff has failed to demonstrate that a triable issue of fact exists regarding his wrongful termination claim under North Carolina law. Shell, 2016 WL 4490716, at *11 (stating that because a plaintiff's "ADEA claim fails, his state law wrongful termination claim must also fail to the extent it is also rooted in alleged age discrimination.") (citation omitted); Perdue v. Sanofi-Aventis U.S. LLC, No. 1:18-cv-00221-MR, 2019 WL 4874815, at *16 (W.D.N.C. Oct. 2, 2019) (Reidinger, J.) (stating that because "the Plaintiff is not entitled to relief under the ADA . . . her state law claim for wrongful discharge also must fail."), appeal docketed, No. 19-2094 (4th Cir. Oct. 8, 2019).  Accordingly, Defendant ICC's Motion for Summary Judgment on the Plaintiff's claim for wrongful termination in violation of North Carolina public policy will be granted.

### D.    Retaliation Under the ADEA and the ADA

Defendant ICC moves for summary judgment on the Plaintiff's retaliation claims under the ADEA and the ADA.  [Doc. 31 at 21].

"To prevail on an ADEA or ADA retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him by the employer; and (3) there was a causal connection between

the first two elements." Ullrich v. CEXEC, Inc., 709 F. App'x 750, 753 (4th Cir. 2017) (citations omitted). If the plaintiff establishes a prima facie case, the employer must produce a legitimate, non-discriminatory reason for the action. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006). If this burden is met, the plaintiff must then show by a preponderance of the evidence that the proffered reason is pretextual or his claim will fail. Ullrich, 709 F. App'x at 753 (citing Foster v. Univ. of Md., 787 F.3d 243, 250 (4th Cir. 2015)).

The Plaintiff does not specifically identify the protected activity in which he claims to have engaged. The only protected activity the Plaintiff plausibly asserts is his complaining about his written reprimand in July 2016. That complaint was significantly removed temporally from the Plaintiff's termination in November 2017. Wilcox v. Lyons, No. 19-1005, 2020 WL 4664794, at *3 (4th Cir. Aug. 11, 2020) ("Although we have not drawn a bright temporal line, we have observed that two-and-a-half months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events in the absence of other evidence of retaliation.") (citation and quotation marks omitted). The Plaintiff does not offer any argument or evidence to show a causal connection between that complaint (or any other protected activity) and his termination. As such, the Court concludes that the Plaintiff's

19

complaint in July 2016 had no causal connection to his termination in November 2017, and therefore his termination cannot serve as the basis for a retaliation claim.

The Plaintiff also seems to assert that ICC hired Defendant Thorn in the beginning of 2017 and reduced the Plaintiff's hours in retaliation for him complaining about his reprimand in July 2016. [Doc. 37-1 at 5; Doc. 30-1 at 94]. In support of that argument, the Plaintiff highlights that Defendant Libera told him that the PACC needed "fresh blood" when the Plaintiff asked about Defendant Thorn's hiring, the reduction of his work hours, and the reprimand. [Doc. 37-1 at 5]. "[A] reduction in working hours can constitute an adverse employment action[.]" Moore v. Staples, Inc., 635 F. Supp. 2d 337, 343 (D. Del. 2009). The Plaintiff, however, fails to show that Defendant ICC hired Defendant Thorn or reduced his hours to retaliate against the Plaintiff for complaining about the July 2016 reprimand or taking any other protected activity. The Plaintiff's complaints in July 2016 were significantly removed temporally from Defendant Thorn's hiring in the beginning of 2017. [Doc. 37-9 at 6-7]. Similarly, the Plaintiff's complaint in July 2016 happened long before ICC reduced his hours. [Id. at 1-9]. The Plaintiff does not contend that the Defendants took any other retaliatory actions against him during the period between July 2016 and early 2017. On that forecast of evidence, no

reasonable jury could conclude that the Plaintiff's complaint in July 2016 had a causal connection to Defendant Thorn's hiring in the beginning of 2017 or the subsequent reduction of the Plaintiff's hours. <u>Wilcox</u>, 2020 WL 4664794, at *3. Accordingly, the hiring of Defendant Thorn and the reduction of the Plaintiff's hours cannot serve as the basis for a retaliation claim.

Because the Plaintiff does not provide any other protected activity that can serve as the basis for a retaliation claim, he fails to establish a prima facie case of retaliation under the ADEA or the ADA.[7] Accordingly, Defendant ICC's Motion for Summary Judgment on the Plaintiff's retaliation claims will be granted.

## E. Failure to Accommodate Under the ADA

Defendant ICC moves for summary judgment on the Plaintiff's claim for failure to accommodate under the ADA. [Doc. 31 at 15].

For a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable

---

[7] Even if the Plaintiff could establish a prima facie case of retaliation, as discussed *supra* n.5, the Defendant has presented a legitimate, non-discriminatory reason (the Plaintiff's disrespectful and threatening behavior toward the PACC director) for the Plaintiff's discharge. The Plaintiff has failed to present any forecast of evidence from which a reasonable jury could find that the proffered reason for his termination was pretextual. <u>See</u> <u>Haulbrook</u>, 252 F.3d at 705-06.

accommodation he could perform the essential functions of the position...; and (4) that the [employer] refused to make such accommodations.'" Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).  There is no dispute that the Plaintiff had a disability or that the Defendants had notice of the Plaintiff's disability.  As such, this case turns on whether the Plaintiff could have "perform[ed] the essential functions of the employment position" with an accommodation and whether the Defendants refused to make such accommodation.  Id.; 42 U.S.C. § 12111(8).

In his deposition, the Plaintiff testified that he requested an accommodation because his disability made it difficult for him to write small letters.  [Doc. 30-1 at 26-29; 65].  The Plaintiff further testified that employees at ICC responded to his request for an accommodation by helping him with his handwriting whenever he needed assistance.  [Id.].  There is no evidence that the Plaintiff ever requested any other accommodation from the Defendants or that the Defendants ever refused to accommodate the Plaintiff's disability.  The Plaintiff states that, following Libera's departure, Defendant Wicker rearranged the lightroom and the lightboard and erased the handwritten instructions on the lightboard that had made it easier for the Plaintiff to overcome his difficulties with remembering information due to his

disability. [Doc. 37-2 at ¶ 13 ("[t]he manner in which Mr. Wicker revamped the lightroom and lightboard were confusing to me due to my disability and made my job more difficult without the written instructions.")]. The Plaintiff does not, however, assert that he asked to have the instructions rewritten, or that the Defendants ever refused to rewrite such instructions in the lightroom or on the lightboard.

In sum, the Plaintiff's own testimony shows that the Defendants offered and provided the reasonable accommodations required by the ADA. Accordingly, Defendant ICC's Motion for Summary Judgment will be granted on the Plaintiff's failure to accommodate claim.

## F. Hostile Work Environment Under the ADA and the ADEA

Defendant ICC moves for summary judgment on the Plaintiff's hostile work environment claims under the AEDA and the ADA. [Doc. 31 at 21].

To state a hostile work environment claim, the Plaintiff must show that: (1) he is a qualified individual under the ADA or over 40 years old under the AEDA; (2) the harassment was unwelcome; (3) the harassment was based on his disability or age; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (5) there is some basis for imposing liability on the employer. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir.

1997) (ADA); Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (AEDA).[8]

Under the third prong, "the harassment must be severe or pervasive enough to create a subjectively and objectively hostile or abusive work environment." Wells v. Gates, 336 F. App'x 378, 388 (4th Cir. 2009) (citation omitted). A court reviewing a hostile work environment claim must examine "all of the circumstances to determine whether the work environment was objectively hostile," including "the frequency of the retaliatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008).

To support his hostile work environment claim, the Plaintiff asserts that the Defendants ignored his complaints when a coworker sabotaged his work equipment before a performance and when his coworker threw a roll of tape at him and injured his hand. [Doc. 37-1 at 7]. The Plaintiff further asserts

---

[8] The Fourth Circuit has explicitly held that the ADA creates a cause of action for hostile work environment. Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). The Fourth Circuit has also "assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006).

that the Defendants cut his hours after Defendant Thorn was hired and made comments about the PACC needing "new blood" and "fresh blood." [Id.].

The Plaintiff's forecast of evidence fails to create a genuine issue of material fact regarding whether any purported harassment was sufficiently severe or pervasive to create a hostile work environment. Although the Plaintiff worked at the PACC for eighteen years, he claims that two comments made by his supervisors about the need to hire new younger employees created a hostile work environment. Such isolated and relatively innocuous comments, however, do not satisfy the high standard needed to show severe and pervasive harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (noting that "a single act of harassment may not be actionable on its own").[9] Moreover, the actions of the Plaintiff's coworkers do not constitute grounds for a hostile work environment claim. An employee throwing a ball of tape at an

_____

[9] Although "[t]he fact that many of the [comments] were not directed at [the Plaintiff] is not determinative[,]" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (citation omitted), it is noteworthy that Defendant Wicker did not make his comment about needing "new blood" to the Plaintiff or in the Plaintiff's presence. [Doc. 37-3 at ¶ 2].

25

employee on one occasion, or interfering with an employee's work equipment on another, does not constitute severe or pervasive harassment. As such, the Plaintiff has failed to show that there is a genuine issue of material fact regarding whether the other employees' actions satisfy the "severe or pervasive" standard.[10]

For these reasons, Defendant ICC's Motion for Summary Judgment will be granted on the Plaintiff's hostile work environment claims.

### G.    Motion for Sanctions Against Plaintiff

Having concluded that the Defendants' Motion for Summary Judgment should be granted on each of the Plaintiff's claims, the Court will, in its discretion, deny the Defendants' Motion for Sanctions.

### V.    CONCLUSION

For all these reasons, the Defendants' Motion for Summary Judgment [Doc. 30] will be granted.

---

[10] Even if the Plaintiff were able to show that these actions constituted severe and pervasive harassment, he does not explain how those actions were based on his disability or age or how those actions affected the terms of his employment.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, and the Plaintiff's claims are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Sanctions for Plaintiff's Failure to Attend Mediation [Doc. 29] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 19, 2020

Martin Reidinger
Chief United States District Judge

27